

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-22-00122-CV
No. 07-22-00125-CV[1]

WAYLAN BATTLES, APPELLANT

V.

ANTHONY INMAN CONSTRUCTION, INC., APPELLEE

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC-30-CV2020-1095, Honorable Charles Barnard, Presiding

March 14, 2023

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This appeal from Appellant, Waylan Battles, is from a summary judgment granted in favor of the Appellee, Anthony Inman Construction, Inc., a general contractor. For the reasons stated below, we find that the undisputed summary judgment evidence conclusively negated the duty element of Battles' cause of action and that the trial court's

[1] These appeals were originally filed in the Second Court of Appeals and were transferred to this Court by a docket-equalization order of the Supreme Court of Texas. See TEX. GOV'T CODE ANN. § 73.001. By order of June 29, 2022, this Court consolidated for appeal cause numbers 07-22-00122-CV and 07-22-00125-CV.

evidentiary ruling is not material to this dispute. We therefore affirm the judgment of the trial court.

## Background

Inman was the general contractor for the construction of a gymnasium at a YMCA facility in Wichita Falls, Texas. Inman hired some thirty subcontractors for the project, including Skipworth Construction Systems, Inc., with whom Battles was employed. As the general contractor, Inman was in charge of the "general direction" of the project but "not the means and methods of the subcontractors [it] employed."

Relevant here, inside the gymnasium area a concrete base formed two concentric rectangles. The outer rectangle was described as being about the width of a "sidewalk." The inner rectangle sat approximately two inches lower than the outer rectangle so it could accommodate an athletic playing surface. Witnesses variably characterized the two-inch height difference in the floors as a "ledge," "drop-off," or a "curb."

In October 2019, Battles was responsible for installing sheetrock along portions of the gymnasium's wall. During the project, he used various equipment, including a scissor lift borrowed from an electrical subcontractor, to reach the height necessary for the work.[2] Battles was aware of the gymnasium floor's drop-off. When asked if his employer inspected the work zone, Battles responded,

> I don't think there was any kind of inspection other than hey, look out for that curb over there, you know don't be [an] idiot and fall over the curb . . . . We knew there was one there, but yeah, there was no inspection.

_____

[2] "A scissor[] lift is a platform atop a set of crisscrossed folding supports that rises vertically by hydraulics or pneumatics." *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 906 n.1 (Tex. 2016).

2

During his work, Battles had previously driven lift equipment over the ledge. He said he found it unnecessary to read the lift's operator-manual's warning about drop-offs because he already knew of the gym's floor.

Battles was also aware that unlike a scissor lift, a boom lift was capable of allowing all four wheels to sit on the lower floor surface and could telescope the user upward and outward over the ledge to the work area. Battles "absolutely" agreed based on his experience that a boom lift under these circumstances is safer than a scissor lift. Although Skipworth did not have a boom lift on site, the evidence indicated that others possessed one or two.[3] Skipworth's superintendent, Jimmy Rivers, instructed his employees to use the scissor lift "to reach what we can reach off of our lift that I provided," and not to go farther. Rivers said he would ask to "borrow an alternate lift at a later time[.]"

On October 15, 2019, Battles was installing sheetrock using a scissor lift that was so wide it "barely fit[]" on the upper surface. While Battles was elevated, the lift's wheels rolled over the ledge; the lift tipped over and Battles fell to the ground.[4] Battles sustained several severe injuries.[5]

Battles filed a negligence suit against Inman and others for his injuries. Inman filed a motion for summary judgment. Inman presented evidence in support of its contention that (1) it maintained no actual or contractual control over Battles' work, and (2) it owed

---

[3] Battles was not aware who owned the lifts.

[4] Battles alleges he fell 40-50 feet.

[5] Battles testified by deposition that he sustained a broken back, broken coccyx, and two broken legs.

3

no duty to warn Battles of an open and obvious condition. Without specifying its reasons, the trial court rendered a take-nothing summary judgment in favor of Inman.

## Analysis

**First Issue: Summary Judgment**

By his first issue, Battles argues the trial court erred in rendering summary judgment in favor of Inman. The summary judgment standard and scope of review for a traditional motion are well-established and do not require restatement here. *See, e.g., McNally v. McNally,* No. 02-18-00142-CV, 2020 Tex. App. LEXIS 7211, at *8–9 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (stating summary-judgment standard and scope of review).

The elements of a negligence claim are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015). The threshold inquiry here is whether Inman, as general contractor, owed any legal duty to Battles, an employee of subcontractor Skipworth; it is a question of law we decide de novo. *See Timberwalk Apartments v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

### 1. No duty imposed by Inman controlling the specific manner in which Battles worked.

A premises owner or general contractor ordinarily does not owe a duty of reasonable care to an independent contractor's employee. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). An exception to this rule arises when the general contractor "retains some control over the manner in which the [sub]contractor performs the work that causes the damage." *AEP Tex. Cent. Co. v. Arredondo*, 612

4

S.W.3d 289, 295 (Tex. 2020). Under those circumstances, the general contractor's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998).

The necessary control is established by proof that the general contractor either controlled the manner in which the subcontractor performed its work or had a contractual right to do so. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021). Such control "must extend to the means, methods, or details of the independent contractor's work." *Id.* *See also Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999). Merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to impose a duty. *Id.* at 155. Likewise, no duty of care is owed simply because the general contractor possesses a general right to control when work starts and stops, or when and where the work is done, or over activities having nothing to do with the resulting injury. *Arredondo*, 612 S.W.3d at 295.

In this case, we find no summary judgment evidence supporting a conclusion that Inman exercised control over the manner in which Battles performed his work, particularly pertaining to the condition or activity that caused Battles' injury. Although Inman retained general supervisory responsibilities over the project as a whole, it at no time instructed Battles in the manner of how to perform the work responsibilities that caused his injury. *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 785 (Tex. App.—Dallas 2013, no pet.) ("General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty.").

5

## 2. No duty by Inman to make safe or warn about the premises defect.

Having found no evidence supporting the conclusion that Inman owed a duty by contract or by virtue of having exercised an actual right of control, we next look to whether Inman owed Battles any legal duty via another theory. In his brief,[6] Appellant argues:

> The Appellant's claim was that the Appellee had dominion and control over the commercial jobsite and had failed to warn or to make safe the unreasonably dangerous condition that existed on the jobsite.

When an injury is alleged to be the result of an unsafe property condition rather than an activity, we examine a negligence claim from a premises liability theory. *Occidental Chem. Corp. v. Jenkins,* 478 S.W.3d 640, 644 (Tex. 2016). Battles' injury allegedly occurred due to an unsafe condition on the gym's floor and not as a contemporaneous result of any activity by Inman; we therefore hold that Battles advances a premises defect theory of negligence. *See United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022); *E.I. Du Pont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 57 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd).

Under a premises liability theory, a general contractor is said to owe the same duty of care to an independent contractor's employee that the premises owner would. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 n.1 (Tex. 1999) (per curiam); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985). In other words, to prevail in a premises liability claim against Inman, Battles is required to prove: (1) Inman had actual or constructive

---

[6] This statement is similar to what Battles argued in response to the motion for summary judgment:

"[Inman] had a duty to properly inspect the premises and make safe or warn of any defects on the premises that [Inman] knew or should have known existed prior to [Battles], who is classified as a business invitee, entering on to the premises. The breach of this duty by [Inman] was the cause in fact and proximate legal cause of the injuries sustained by [Battles]."

6

knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) Inman did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) Inman's failure to reduce or eliminate the unreasonable risk of harm proximately caused Battles' injuries. *McIntire*, 646 S.W.3d at 802 n.4. Under the third element, reducing or eliminating the unreasonable risk of harm means that Inman must "make safe or warn against any concealed, unreasonably dangerous conditions of which [it was], or reasonably should [have been], aware," but Battles was not. *McIntire*, 646 S.W.3d at 802 (quoting *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017)) (brackets in original).

Generally, this duty is stated in the alternative: to warn <u>or</u> to make safe. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). We note, however, that Inman's duty to warn or make safe is only for those dangerous conditions that are <u>concealed</u>. Inman owes no duty to warn of premises defects of which Battles is already aware. *Id.*; *GE v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). This doctrine is applied in *Phillips v. Abraham*, 517 S.W.3d 355, 358 (Tex. App.—Houston [14th Dist.] 2017, no pet.), a case in which Phillips, the plaintiff, was injured when he fell while attempting to walk over the crumbling driveway at his leased residence. The evidence revealed that Phillips was already aware of the driveway's poor condition at the time of the incident.[7] The Fourteenth Court of Appeals affirmed the grant of summary judgment because the landowner had no duty to make the driveway safe or warn of a condition that Phillips already knew. *Id.*

---

[7] The evidence showed Phillips had already suffered a broken foot in the same area of the driveway in which he fell.

7

The present case shows without dispute that the drop-off posed by the two leveled gymnasium floor was well known to Battles before the October 15, 2019, incident that led to his injuries. After Battles knew his employer was told not to "fall over the curb," Battles drove equipment over this two-inch ledge on other occasions; he acknowledged it was unnecessary to read the operator-manual's warning about drop-offs due to his personal knowledge about the condition. Consistent with longstanding authority and this undisputed evidence, we hold that Inman owed Battles no duty to warn of the condition posed by the gym floor's differing floor heights. *Id.*[8]

Nevertheless, Battles argues summary judgment was improper due to the "necessary use exception." This exception to the no-duty doctrine imposes a duty on the general contractor/landowner to make the premises safe when, despite the invitee's awareness of the dangerous condition, it was (1) necessary that the invitee use the dangerous premises, and (2) the landowner should have anticipated that the invitee would be unable to avoid the unreasonable risk of danger. *Austin*, 465 S.W.3d at 208; *Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141 (Tex. App.—El Paso 2022, no pet.).

But does the necessary use exception apply in instances, like here, when the plaintiff is an independent contractor and expected to rely upon his expertise in performing the job? Recently, the Supreme Court has expressed doubt. *See SandRidge Energy, Inc. v. Barfield*, 642 S.W.3d 560, 568 (Tex. 2022). Quoting from *Moritz*, the high court observed, "'[O]ne who hires an independent contractor generally expects the contractor to take into account any open and obvious premises defects in deciding how the work

---

[8] *See also Austin*, 465 S.W.3d at 204; *Moritz*, 257 S.W.3d at 218; *Roye*, 447 S.W.3d at 60.

8

should be done, what equipment to use in doing it, and whether its workers need any warnings.'" *Id.* (quoting *Moritz*, 257 S.W.3d at 215–16).

We find that it is unnecessary to answer the question of whether Battles is entitled to assert the exception because the summary judgment evidence does not raise any genuine issue of material fact about necessary use. Skipworth's contract called for it to provide all "equipment, tools, [and] machinery" for its work; it was "exclusively and solely responsible for . . . supervision and/or coordination related to the safety of [Skipworth's] employees. . . ." Battles knew a boom lift would permit him to perform the work more safely than a scissor lift. Although Skipworth did not have a boom lift on site, its potential for use demonstrates that an alternative means of performing Battles' job duties was possible: he and his employer did not pursue it. It was not Inman's responsibility to provide Battles with the equipment for his tasks.

Moreover, we find no evidence in the record on the second element: that Inman should have anticipated Skipworth and its employees would be unable to avoid the unreasonable risk of danger posed by the gym floor elevation change. *See Barfield*, 642 S.W.3d at 569 (noting a plaintiff relying on the necessary-use exception must show the landowner would anticipate the invitee was unable to take measures to avoid the risk). We conclude the summary judgment record conclusively demonstrates the inapplicability of the necessary-use exception. Because summary judgment was proper, Battles' first issue is overruled.

**Second Issue: Evidentiary Ruling**

Our resolution of the first issue pretermits discussion of the second, regarding the trial court's ruling on the admissibility of a post-occurrence report purportedly prepared by Anthony Inman and offered by Battles in response to Inman's motion for summary judgment. TEX. R. APP. P. 44.1(a). Admission of the complained-of report would not alter the conclusion that Inman owed Battles no duty as a matter of law. Battles' second issue is therefore overruled.

## Conclusion

Having overruled Battles' two issues on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice